UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>    v.<br><br>ISMAEL HUAZO-GARCIA,<br><br>             Defendant. | No.   2:18-cr-00056-SMJ<br><br>**ORDER DISMISSING INDICTMENT**<br><br>**U.S. MARSHALS ACTION REQUIRED** |

     Before the Court is Defendant Ismael Huazo-Garcia's Motion to Dismiss Indictment, ECF No. 28.[1][2] Defendant is charged with one count of being an alien in the United States after deportation under 8 U.S.C. § 1326. ECF No. 17. "A defendant charged under § 1326 has a due process right 'to collaterally attack his removal order because the removal order serves as a predicate element of his conviction.'" *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014)

---

[1] The Court finds that oral argument is unnecessary in this matter. The hearing set for May 22, 2018, at 1:30 p.m. is therefore stricken.

[2] Pursuant to Local Rule 7.1(b)(3), the Government's deadline to file a response to Defendant's motion was May 11, 2018. The Government filed its response on May 15, 2018, without requesting leave or explaining the reason for this late filing. ECF No. 33. While the Court has considered the Government's briefing, such unexcused late filing will not be tolerated in the future and may result in the filings being stricken or in attorney sanctions.

ORDER
DISMISSING INDICTMENT - 1

(quoting *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). Defendant argues that the charge against him must be dismissed because the underlying removal order on which the charge is based was unlawful. ECF No. 28 at 1–2. Because Huazo-Garcia was not permitted to review his sworn statement in the underlying expedited removal proceedings, those proceedings violated his right to due process. And because Huazo-Garcia has demonstrated that he was prejudiced by this violation, the indictment in this case must be dismissed.

## BACKGROUND

### A. Personal history

Defendant Ismael Huazo-Garcia was born in Mexico and moved to Salinas, California when he was 6 years old. Huazo-Garcia lived with his stepfather, Ruben Mendez, who is a legal resident, and three of his siblings. He attended school in Salinas through ninth grade. With the exception of a brief move to Oxnard, California, when he was about 16, Huazo-Garcia continued to reside in Salinas until he moved to Washington State with his partner Cozette in 2017. He is now 24 years old.

Huazo-Garcia remains in contact with his step father, the three siblings he grew up with, and four other siblings, all of whom live in the United States. He is in a long-term relationship with a partner, Cozette, who has had legal status since

2012. He states that he does not have a close relationship with any family in Mexico.

Huazo-Garcia speaks, reads, and writes in Spanish, and has very limited English.

**B.      Immigration history**

Huazo-Garcia remembers briefly traveling to Mexico with a cousin in December 2009, when he was 13 years old. Huazo-Garcia traveled to Mexico again in 2013.[3] As he was returning, he was taken into custody by border patrol. He honestly identified himself and admitted that he did not have legal status.

Border Patrol agent Raul Perez conducted expedited removal proceedings on January 22, 2013, at which Huazo-Garcia initialed a "Record of Sworn Statement in Proceedings" and signed a "Jurat for Record of Sworn Statement in Proceedings." These documents, which are in English, purport to advise Huazo-Garcia that (1) he does not appear to be admissible to the United States; (2) he "may be immediately removed from this country, and if so, . . . may be barred from reentry for a period of 5 years or longer"; and (3) this may be his only opportunity to present information. The documents also contain a transcript of an interview by Perez, in which Huazo-Garcia purportedly answered that he

---

[3] It appears from the record that he may have made this trip to attend his grandmother's funeral

ORDER
DISMISSING INDICTMENT- 3

understood his rights and admitted to being born in Mexico and to entering the United States unlawfully.

Huazo-Garcia states that Perez told him to sign documents and explained only that he could not be released to return to Mexico until he signed them. Huazo-Garcia asserts that Perez did not explain the documents, give him the opportunity to review the documents, read the documents to him in Spanish or English, or ask if he wanted to have the documents read to him. Huazo-Garcia further asserts that no one explained the consequences of an expedited removal to him, i.e., that he would be barred from reentry for five years and that the removal could be the basis for felony prosecution. He also states that if he had known he could ask to withdraw his application to be admitted to the United States and remain eligible to apply for legal entry, he would have done so.

Huazo-Garcia was removed on January 22, 2013, and prohibited from reentering the United States for five years. Perez states in his narrative description of the expedited removal that he read and explained the documents to Huaz-Garcia, and that Huazo-Garcia acknowledged understanding his rights and agreed to give a sworn statement.

In a statement prepared in May 2018, Perez explains the process he follows in expedited removal proceedings, including that:

> As part of my processing duties, I provide the alien the opportunity to review his/her case. I also make sure he/she understands what they

ORDER DISMISSING INDICTMENT- 4

> are being charged with, either administratively or criminally. In addition to explaining all right [sic] and forms, I make sure they understand them when I read it to them in the Spanish Language.

But Perez does not provide any statement regarding what happened in this specific case.

## DISCUSSION

"To sustain a challenge to an indictment (or information) under § 1326, a defendant must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya-Vaca*, 771 F.3d at 1201. (quoting 8 U.S.C. § 1326(d)). Because expedited removal proceedings do not provide an opportunity for administrative or judicial review, Huazo-Garcia exhausted his administrative remedies and was deprived of the opportunity for judicial review. *See id.* at 1202. The dispositive question here is therefore whether the removal order was "fundamentally unfair." A deportation order is "fundamentally unfair" if the deportation proceeding violated the defendant's due process rights and caused prejudice. *Id.* at 1201–02.

Huazo-Garcia argues that his prior expedited removal, on which the current charge is predicated, violated his due process rights because he was not told he was in formal removal proceedings and not given an opportunity to review his

ORDER
DISMISSING INDICTMENT - 5

sworn statement. ECF No. 29 at 2. Huazo-Garcia argues that he was prejudiced by this violation because, absent the violation, he may have had the opportunity to voluntarily withdraw his application for admission to the United States. ECF No. 29 at 2. Because Huazo-Garcia was not permitted to review his sworn statement in the underlying expedited removal proceedings, those proceedings violated his right to due process. And because Huazo-Garcia has demonstrated that it was plausible he would have been permitted to withdraw his application, he was prejudiced by the violation.

### A. Due process

Under the regulations governing expedited removal, an immigration officer has a duty to advise the alien of the charges against him, and the alien must be given the opportunity to respond to the charges in a sworn statement. 8 C.F.R. § 253.3(b)(2)(i). Additionally, "[t]he examining immigration officer shall read (or have read) to the alien all information contained [in the sworn statement]." *Id.* In *Raya-Vaca* the Ninth Circuit concluded that these regulations protect an alien's fundamental due process rights to notice and opportunity to respond to charges. 771 F.3d at 1204. Accordingly, the court held that a failure to inform an alien in expedited removal proceedings of the charge against him or to provide opportunity to review the sworn statement constitutes a violation of the alien's due process rights. *Id.* In *Raya-Vaca* the court relied on the defendant's signed

declaration that no immigration officer explained to him the nature of the removal proceedings or that he could be ordered removed from the United States, and that no immigration officer read to him or permitted him to review the information in the sworn statement. *Id.* at 1205.

In this case, Huazo-Garcia avers that he was not told he was facing a formal removal order. He argues that the statements that he *may* be removed and *may* be barred from reentry for five years did not give him notice that he would, in fact, be formally removed without any further consideration and barred from reentry for five years. ECF No. 28 at 11. Huazo-Garcia also avers that he was not given the opportunity to review the sworn statement prepared in his name. He did initial the Record of Sworn Statement and sign a "Jurat for Record of Sworn Statement in Proceedings" which acknowledged that he had "read (or have had read to me) this statement, consisting of 1 pages (including this page)." But he avers that he did not understand what he was signing.

On the current record, factual questions remain concerning whether and the extent to which Agent Perez advised Huazo-Garcia of the charges against him and of the consequences of expedited removal. However, there is no evidence that Perez read Huazo-Garcia's sworn statement to him or that Perez told Huazo-Garcia he was permitted to review his sworn statement. This failure alone was a violation of Huazo-Garcia's due process rights. *See Raya-Vaca*, 771 F.3d at 1204.

ORDER
DISMISSING INDICTMENT- 7

**B.     Prejudice**

To demonstrate prejudice, an alien "must show that he had 'plausible grounds for relief' from the removal order." *Id.* at 1206 (quoting *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996)). In answering this question, courts follow a two-step process. First, identifying "the factors relevant to the [agency's] exercise of discretion for the relief being sought." *Id.* (quoting *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013)). Second, determining "'whether, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the [defendant's] own case,' it was plausible that the agency official considering the defendant's case would have granted relief from removal." *Id.* (quoting *Rojas-Pedroza*, 716 F.3d at 1263).

Huazo-Garcia argues that the relief he could have obtained was withdrawal of application for admission. ECF No. 28 at 17. This would have allowed him to leave the United States without a deportation on his record.

Courts look to the Inspector's Field Manual for guidance on whether it is plausible an immigration officer would have permitted withdrawal of application for admission. *Id.*; *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1090 (9th Cir. 2011). The Manual instructs officers to "consider all facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice. INS Inspector's Field Manual § 17.2(a) (2007), *available*

ORDER
DISMISSING INDICTMENT- 8

*at* Westlaw FIM–INSFMAN 17.2, 2007 WL 7710869. The Manual lists six non-exhaustive factors for consideration: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Barajas-Alvarado*, 655 F.3d at 1091. However, "withdrawal should 'ordinarily' not be permitted 'in situations where there is obvious, deliberate fraud on the part of the applicant.'" *Raya-Vaca*, 771 F.3d at 1208 (quoting *Barajas-Alvarado*, 655 F.3d at 1091).

*Raya-Vaca* is, again, directly on point. *Id.* at 1206–07. In *Raya-Vaca*, the court held that the defendant had "some evidentiary basis on which relief could have been granted." *Id.* at 1208. The court began by looking at the Field Manual factors: First, the court noted that, unlike in *Barajas-Alvarado*, Raya-Vaca committed no fraud. *Id.* Second, the court noted that Raya-Vaca's relatively serious violation and immigration history (including six illegal reentries) weighed against the plausibility of relief, but the court concluded that this was not dispositive and cited examples of recidivist immigration violators being permitted to withdraw applications for admission. *Id.* Third, the court noted that Raya-Vaca's apparent good health and relative youth did not support his assertion that relief was plausible. *Id.* Fourth, however, the court noted that the fact that Raya-

ORDER
DISMISSING INDICTMENT - 9

Vaca's long-term partner and his brother were citizens indicated a path to legal status that favored the plausibility of relief. *Id.* Finally, the court explained that humanitarian considerations favored relief because Raya-Vaca's partner and her children, his mother, siblings, and much of his extended family live in the United States. *Id.* The court also considered factors beyond those listed in the Field Manual, concluding that Raya-Vaca's minimal criminal history and examples and statistics regarding how frequently and in what types of circumstances withdrawal of application is granted supported that relief was plausible. *Id.* at 1209.

This case is similar to *Raya-Vaca* in several respects: Huazo-Garcia has not committed fraud; he also has significant ties to the United States—he has lived in the United States since he was a young child, has gone to school in the United States, has siblings in the United States, including some with legal status, and has no significant ties to Mexico—and he is relatively young and in good health. In other respects, Huazo-Garcia appears to be a more likely candidate for withdrawal of application than was Raya-Vaca: Huazo-Garcia had no prior deportations and only one prior reentry, and Huazo-Garcia's only criminal history at the time of his expedited removal was a juvenile charge for possessing burglary tools, compared to three adult convictions in the case of Raya-Vaca.[4]

---

[4] The Government notes that Huazo-Garcia has subsequent convictions in 2016 and 2017, but this is not relevant to whether he would have been permitted to withdraw his application for admission in 2013.

ORDER
DISMISSING INDICTMENT- 10

Because it is plausible that Huazo-Garcia would have been permitted to withdraw his application for admission, he has demonstrated prejudice.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss Indictment, **ECF No. 28**, is **GRANTED.**

2. The Indictment, ECF No. 17, is **DISMISSED WITHOUT PREJUDICE**.

3. Trial and all scheduled hearings and deadlines in this matter are **STRICKEN**.

4. Defendant Ismael Huazo-Garcia is ordered **RELEASED** from custody.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 21st day of May 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge